FILED

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA** 17  PM 2: 14
**ORLANDO DIVISION**

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

LAURA WILLIAMSON

      Plaintiff,

      vs.

CASE NO.: 6:18-CV-767-ORL-31-TBS

DIGITAL RISK, LLC, a Delaware limited
liability company, DIGITAL RISK
MORTGAGE SERVICES, LLC, a
Delaware limited liability company,
MPHASIS CORPORATION, a foreign
corporation, MPHASIS LIMITED, INC., a
foreign corporation,

      Defendants.

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    COMES NOW, the Plaintiff, LAURA WILLIAMSON, by and through her undersigned

counsel, and hereby sues the Defendants, DIGITAL RISK, LLC, a Delaware limited liability

company, DIGITAL RISK MORTGAGE SERVICES, LLC, a Delaware limited liability company,

MPHASIS CORPORATION, a foreign corporation, MPHASIS LIMITED, INC., a foreign

corporation, and states as follows:

**NATURE OF CLAIM**

    1.    Plaintiff seeks to redress injuries she suffered as a result of employment

discrimination by Defendants. Plaintiff suffered and continues to suffer from being subjected to

unequal treatment, discrimination on account of her gender, a hostile work environment, and

retaliation. Plaintiff brings the claims of discrimination under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §2000(e) *et seq.* ("Title VII"); the Florida Civil Rights Act, §760.01 *et*

*seq.,* Florida Statutes ("FCRA"), and, Florida Statutes §725.07. Plaintiff also seeks redress from

injuries suffered from being subjected to unequal treatment with respect to her pay under the Equal Pay Act, 42 U.S.C. §206(d)(1), and under common law claims for Infliction of Emotional Distress, Defamation, and Breach of Contract.

## PARTIES

2.     Plaintiff, a female, is a citizen of the United States and at all times material hereto, a resident of either Seminole or St. Johns County, Florida.

3.     Defendant, Digital Risk, LLC is a Delaware limited liability company with its principal address being in Maitland, Florida.

4.     Defendant, Digital Risk Mortgage Services, LLC is a Delaware limited liability company with its principal address being in Maitland, Florida.

5.     Defendant, Mphasis Corporation is a foreign (Indian) corporation, with its principal offices in New York and its mailing address in Maitland, Florida. It conducts business and operations in Florida within this Court's jurisdictional reach.

6.     Defendant, Mphasis Limited, Inc. is a foreign (Indian) corporation, with its principal offices in India and its mailing address in Maitland, Florida. It conducts business and operations in Florida within this Court's jurisdictional reach.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343(4) (enforcement of civil rights); and 28 U.S.C. §1367 (supplemental jurisdiction over related claims).

8.     Venue is proper in this Court because the Defendants reside, operate, and conduct business throughout the State of Florida, but mainly in Maitland, Florida (within this Court's jurisdiction). A substantial part of the events, omissions, and activities giving rise to Plaintiff's

claims occurred within this court's geographical boundaries.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Prior to filing this case, the Plaintiff timely filed written charges of discrimination against the Defendants with the Equal Employment Opportunity Commission ("EEOC") and simultaneously with the Florida Commission on Human Relations ("FCHR") through a dual jurisdictional filing.

10.     After its administrative review, the EEOC issued Plaintiff a Notice of Right to Sue and she has filed this case within the ninety (90) days of receiving that Right to Sue notice.

## BACKGROUND FACTS

11.     Plaintiff joined Digital Risk, LLC and Digital Risk Mortgage Services, LLC (collectively Digital Risk) in 2010 as a senior operations manager.

12.     In 2012, an India-based conglomerate of Mphasis Corporation and Mphasis Limited, Inc. purchased the Digital Risk entities.

13.     Since that time, each of Digital Risk, LLC, Digital Risk Mortgage Services, LLC, Mphasis Corporation, and Mphasis Limited, Inc. were highly integrated with respect to both their ownership and operations. They each operated from a single facility in Maitland, Florida, have common ownership and management, and are commonly controlled financially. Both Mphasis entities conduct business in the Digital Risk name, comingle staff, resources, facilities, and leadership.

14.     At least as to the Plaintiff's dealings and employment, each of the four corporate Defendants operated without distinction or formality, making it impossible for her (or anyone without direct access to inside information) to differentiate which entity she was operating on behalf of at any given time.  It is also impossible for her to know or determine at this point in time which

3

managers, supervisors, or directors were employed by which specific corporate entity. All entities provided training, strategy, and support to the employees of Digital Risk. Certain Digital Risk employees, including Plaintiff, received stock in Mphasis as part of their compensation packages.

15.     At a minimum, the issues complained of herein were directed, approved of, and ratified by the common ownership and management in control of each corporate Defendant. Each of the Defendant entities act as and perform obligations indicative that they are agents of one another.

16.     Beginning in 2014, the Defendants impaneled Seshagiri (Sesha) Dhanyamraju as Chief Executive Officer of Digital Risk. Sesha had previously worked for Mphasis and continued to report to Mphasis directly.  Sesha had the control and authority over the Defendants' operations, including management, opportunities, and personnel.

17.     Since appearing in 2014 until he was terminated in August 2017, Sesha fostered a corporate culture of divisiveness, aggression, and intimidation, especially against females.

18.     Sesha refused to shake Plaintiff's hand during ordinary meetings, while shaking male counterparts' hands.  He refused to make eye contact with Plaintiff, making normal business interactions awkward and difficult. Sesha's assistant advised the Plaintiff that he was acting in this manner because she was a female. His actions toward Plaintiff continued throughout his time with the companies.

19.     Once he uncovered that Plaintiff made more compensation than him, he made Plaintiff's job unnecessarily difficult at every turn.  He took actions to purposefully demean, disrespect and intimidate the Plaintiff. He would pound tables, point fingers in Plaintiff's face, and falsely accuse her of making statements that she never made. He would routinely pit Plaintiff against her business partners in meetings and would create unnecessary friction whenever Plaintiff was present.

20.     In an outrageous display of aggression and harassment, in December 2014 Sesha placed the desk of a hand-picked employee by the name of Ashok Subbarama, mere feet from the door of Plaintiff's office such that Plaintiff would have no choice but to make physical contact with him when entering and exiting her office. Mr. Subbarama acted as Sesha's "spy." Plaintiff was advised by multiple executives that "Ashok is Sesha's spy" and that she should be careful because he was looking for dirt on her. He watched Plaintiff's every move, listened to her every call, and reported her doings back to Sesha. Mr. Subbarama stayed in this position for over a year. Consequently, Plaintiff was in a constant state of unrest and discomfort.

21.     In 2016, the Defendants' managing member, Jeffery Taylor, advised Plaintiff that the reason for Sesha's bizarre behavior was because Plaintiff was a "female making more money than him," and that he had "a very big problem with that."

22.     Sesha and other members of company leadership, including Puneet Bhirani, participated in the harassment, aggression, and intimidation. Like Sesha, Mr. Bhirani refused to make eye contact with Plaintiff and shake her hand. In meetings, both Sesha and Bhirani would aggressively berate and raise their voices at her to the point where Plaintiff would need to be consoled by other employees after the meetings concluded. The aggression was pervasive, directed at other women, and lasted throughout Plaintiff's remaining employment term.

23.     After the Mphasis companies purchased Digital Risk, Mr. Taylor advised Plaintiff – on at least two dozen occasions – that "the Indians," as Mr. Taylor referred to them, put a "target on her back" because she was "a female making too much money."

24.     Mr. Taylor, who had always praised Plaintiff as his hardest working, most successful, best performing, and most trusted employee, advised Plaintiff that the "Indians" did not like women making as much as Plaintiff was making. Mr. Taylor told Plaintiff on multiple occasions that he

would do what he could to protect her from "the Indians" and the "target" they put on her.

25.    In 2016, despite his promises of "protecting" the Plaintiff from "the Indians'" discrimination, Mr. Taylor reassigned several of Plaintiff's accounts to other employees. The reason given for the reassignment of her long-standing client accounts was that she "was making too much money," that her female contemporary was also a "target of the Indians," that her male contemporaries in the company needed to make more money, and that a reduction of Plaintiff's pay would protect her from the Indian ownership group.

26.    Plaintiff was clearly being treated differently than her male counterparts. Not only did Defendants actively deprive her of clients and sources of income, they rejected her ideas for business growth while simultaneously praising the same ideas presented by males. At every turn, Plaintiff was treated as a second-class citizen, undeserving of the opportunity to succeed.

27.    In late 2016, Plaintiff became engaged to be married. Mr. Taylor began mentioning her engagement often and stated that he assumed Plaintiff would leave work once she was married. Plaintiff was subjected to these false and gender-biased assumptions from other leaders and employees as well. It was their mistaken belief that because Plaintiff was female and that her fiancé made a comfortable living, that she would cease working after marriage. Regardless of her insistence that she would continue to work, and that work was a part of her identity, the companies' increased their discrimination.

28.    Despite Plaintiff's marriage engagement, she had no intention of leaving her employment, career, or otherwise.

29.    Immediately after announcing her engagement, Plaintiff was tasked with difficult travel schedules (that none of her male colleagues were given). She was excluded from important business meetings. She was purposefully and completely left out of critical employment

6

opportunities, and otherwise greatly limited in her opportunities to obtain client accounts. She was not permitted to work remotely when the occasion called for it. None of her male counter-parts were so restricted. Because part of her income was commission-based, this dramatically decreased her earnings.

30.     The anti-female culture fostered at the companies was pervasive and led to severely abhorrent company sanctioned behaviors. At a company event in 2014, one of Defendants' clients groped Plaintiff and requested she go to his room with him. Plaintiff responded by immediately running away. On multiple occasions both before and after that event, the client propositioned Plaintiff for oral sex. These advances were witnessed by Defendants' employees, including Mr. Taylor, and lasted for approximately three years. Plaintiff requested multiple times that she be removed from that client account. Defendants denied her request, and she was told by Mr. Taylor that she could "handle him," and told to "tough it out" as it was the company's highest-level client. She was required by the company to meet with this individual time and time again for business meetings, dinners, and other events.

31.     Throughout 2016 and 2017, the Defendants stopped allocating resources to Plaintiff's deals, her accounts, and her clients. They made it extraordinarily difficult for her to perform her job functions as before. She lost clients (and income) because of the lack of support. At the same time, Plaintiff's sales goals and quotas were not concomitantly reduced, thereby making performance success impossible.

32.     When Plaintiff was still able to lure in some business the Defendants usurped her clientele and placed those accounts with her male colleagues.  Again, the reason Mr. Taylor gave for transferring Plaintiff's clients to male colleagues was that she was making too much money as a female, that "the Indians" had a problem with the amount she was making, and that reducing her

income would remove the "target" from her back.

33. Mr. Taylor also advised Plaintiff that despite taking away the clients she originated, she was still making "enough" money as a woman.

34. At this time, the Plaintiff, who had an unblemished 25-year career, was falsely accused of saying "shush" on the phone during a phone call. The charge was false. The Defendants' legal office and Plaintiff's superiors urged Human Resources that the issue was a non-event and that the complaint should be dismissed out of hand.

35. Despite this, Sesha and Kishore GR, Defendants' Human Resources Director, initiated a full investigation, interviewed Plaintiff's colleagues, and otherwise left no stone unturned as they searched for any evidence that she had broken company rules. Ultimately, they failed to find any fault on Plaintiff's part.

36. Defendants' Chief Legal Officer along with Mr. Taylor advised Plaintiff that she was being unfairly targeted and singled-out because she was one of the highest-ranked females within the organization. Mr. Taylor commented that the "investigation" was conducted because "it drives Sesha crazy that [Plaintiff] made more than him." Mr. Taylor characterized the investigation as "bureaucracy," rather than what it truly was - a discriminatory witch hunt.

37. In response, Plaintiff formally complained to Defendants through Mr. Taylor, Mr. Gr, and Digital Risk's legal office that she was being unfairly targeted and discriminated against. Unlike the rush to investigate the false "shush," the Defendants failed to open any investigation into the discrimination against the Plaintiff. The reason is clear. When the owners and high-ranking officers are the ones engaging in discrimination, directing illegal actions and ratifying those actions, it is futile for them to investigate themselves. Of course, it is not in their interest.

38. When Plaintiff complained to Mr. Taylor that she would have to obtain legal counsel

to address the discrimination, Mr. Taylor warned her that "the Indians would view it as an attack," that they "would play dirty," that her "days would be numbered," and that her career would be over."

39. Sure enough, that is exactly what happened.

40. By August 2017, Mr. Taylor again confirmed to Plaintiff that she was being targeted but that he could no longer protect her. He started rapidly taking Plaintiff's few remaining accounts and clients away from her, while keeping her sales goals unchanged. The vast reduction in her clients made it impossible to meet her goals. Moreover, by taking away client accounts, Mr. Taylor ensured that Plaintiff's commission-based income would be substantially reduced, while her male colleague's incomes would be increased.

41. Plaintiff pleaded with Mr. Taylor for redress, and a reason why she was being targeted by the companies. By the first week of January 2018, Mr. Taylor retorted that taking away Plaintiff's accounts was the only way he could try to protect her from "the Indians" who still thought she was making too much. He continued to take additional long-standing accounts away from Plaintiff. Nevertheless, he advised Plaintiff that doing so would protect her, that she was his "best" and "brightest," that she was the "hardest working" employee, and that she was still successful and the best relationship builder there. She was a superb employee, except in the eyes of company leadership, who faulted her for being female.

42. On January 10, 2018, Plaintiff retained counsel who sent a letter to the Defendants advising them that Plaintiff planned to file an EEOC complaint based on the continued harassment and discrimination. The correspondence stated that Plaintiff would remain at her position and demanded that no additional adverse actions be taken against her for her complaints against discriminatory practices. *See* Plaintiff's formal notice of forthcoming EEOC charge of discrimination attached hereto as **EXHIBIT "A."**

43. Within 48 hours of notifying the Defendants of her forthcoming EEOC claim, the

9

Defendants terminated her employment.

44.     In doing so, the Defendants eviscerated Plaintiff's decades of work in a specialized career, her 8-year employment with the Defendants, and immediately cut her off from her colleagues and longstanding client relationships and accounts. In addition, Defendants refused to authorize and otherwise cooperate in the cash-out of her stock options, which were fully vested and for which she was already taxed.

45.     On or about the second week of January 2018, in order to appease the remaining employees' curiosity, Mr. Taylor held a conference call with multiple members of his teams. He falsely stated on that call that Plaintiff was terminated for a violation of company policy. The following week, Mr. Bhirani had a conference call with the companies' operations leaders. Like Mr. Taylor, he falsely stated that Plaintiff was terminated for a violation of company policy and that Plaintiff engaged in a criminal infraction. During this same period of time, Mr. Taylor informed Plaintiff's account clientele that she was no longer with the Defendants after "some changes that she could not keep up with." Mr. Taylor represented and implied to these business colleagues that Plaintiff was terminated for her business failures, that she was not performing up to par, and that she was unable to adapt to company changes. These statements were false.

46.     All conditions precedent to the filing of this lawsuit have occurred or have otherwise been waived.

## COUNT I – TITLE VII GENDER DISCRIMINATION
### (All Defendants)

47.     Plaintiff incorporates paragraphs 1- 46 by reference herein.

48.     Plaintiff is a female and at all times material hereto was well qualified for the employment position she performed for the Defendants. Defendants were responsible for the employment environment in which Plaintiff worked, for the policies and procedures that govern that

environment, and for the existence of the discrimination and harassment present in that working environment which they failed to prevent despite their obligation to do so.

49.     Plaintiff was discriminated against on the basis of her gender in violation of Title VII.

50.     Plaintiff's direct supervisor advised her that she was making more money than the company's CEO, which infuriated him, because, "as a female," "she should not be making that much money."

51.     Because of her immutable characteristic of being a female, the Plaintiff was discriminated against with respect to her compensation, terms, conditions and privileges of employment. She was deprived of opportunities, and adversely affected simply because of her gender. Her similarly situated male counterparts were treated more favorably than her with respect compensation, terms, conditions and privileges of employment.

52.     Plaintiff complained of the discrimination to Defendants' management. Defendants failed to reasonably investigate her complaints and to undertake prompt, remedial measures to address her complaints and concerns.

53.     As a direct and proximate result of the unlawful gender discrimination occurring at Defendants' work place, the Plaintiff has suffered and continues to suffer direct and consequential damages, including but not limited to loss of employment income and employment benefits, mental pain and anguish, emotional suffering and loss of dignity.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff lost wages, including salaries, commissions, bonuses, raises, benefits, compensatory damages (including mental and emotional distress), front pay, punitive damages, pre and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT II – TITLE VII GENDER-BASED HARASSMENT
### (All Defendants)

54.     Plaintiff incorporates paragraphs 1-46 by reference herein.

55.     Plaintiff is a female and at all times material hereto was qualified for the employment position she performed for the Defendants. Defendants were responsible for the employment environment in which Plaintiff worked, for the policies and procedures that govern that environment, and for the existence of the discrimination and harassment present in that working environment which they failed to prevent.

56.     Plaintiff was discriminated against on the basis of her gender by being subjected to a hostile working environment in violation of Title VII. The harassment and hostilities that Plaintiff was subjected to were unwelcome and offensive, malicious, and recklessly and intentionally indifferent to her protected employment rights.

57.     The hostile working environment was sufficiently pervasive and severe, so as to alter a term, condition, or privilege of her employment with the Defendants and created an abusive environment.

58.     Plaintiff complained to Defendants' management that she was being subjected to harassment and a sexually hostile employment environment on the basis of her gender and Defendants failed to reasonably investigate said complaints and also failed to undertake prompt, remedial measures to address her complaints and concerns.

59.     As a direct and proximate result of the unlawful gender discrimination and harassment occurring at Defendants' work place, the Plaintiff has suffered and continues to suffer direct and consequential damages, including but not limited to loss of employment income and employment benefits, mental pain and anguish, emotional suffering and loss of dignity.

12

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff lost wages, including salaries, commissions, bonuses, raises, benefits, compensatory damages (including mental and emotional distress), front pay, punitive damages, pre and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT III – TITLE VII RETALIATION
### (All Defendants)

60.     Plaintiff incorporates paragraphs 1-46 by reference herein.

61.     After Plaintiff complained to her superiors that she was being unlawfully discriminated against, the Defendants retaliated against her in violation of Title VII by terminating her employment.

62.     The Plaintiff was intentionally subjected to hostile conditions that were sufficiently pervasive and severe, so as to alter a term, condition, or privilege of her employment with the Defendants in part because of her attempts to defend against their discriminatory practices.

63.     Plaintiff complained to Defendants' management that she was being subjected to gender discrimination, yet the Defendants failed to reasonably investigate her complaints and concerns. They also failed to undertake prompt, remedial measures to address her complaints and concerns. Instead, they terminated her as a consequence of her reports of discrimination. But for her complaint regarding the harassment and discrimination, Plaintiff would not have been terminated.

64.     Shortly after telling her employer of 8 years that she was filing an EEOC charge for discrimination and harassment, the Defendants shut off her email accounts, advised her not to return to work, and terminated her.

65.     As a direct and proximate result of the unlawful retaliation, the Plaintiff has suffered and continues to suffer direct and consequential damages, including but not limited to loss of

13

employment income and employment benefits, mental pain and anguish, emotional suffering and loss of dignity.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff lost wages, including salaries, commissions, bonuses, raises, benefits, compensatory damages (including mental and emotional distress), front pay, punitive damages, pre and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT IV – EQUAL PAY ACT DISCRIMINATION
### (All Defendants)

66.     Plaintiff incorporates paragraphs 1-46 by reference herein.

67.     Plaintiff is a female and at all times material hereto was qualified for the employment position she performed for the Defendants.

68.     Plaintiff was discriminated against on the basis of her gender in violation of the Equal Pay Act. 29 U.S.C. § 206(d)(1).

69.     In particular, Plaintiff's direct supervisor advised her that she was making more money than the company's CEO, which infuriated him, because, as "a female," "she should not be making that much money."

70.     The Defendants systematically reduced Plaintiff's accounts and removed necessary resources and support in an effort to reduce her commissions and compensation so as to equalize her pay in comparison with her male colleagues whom they thought should make more money than a woman.

71.     Plaintiff was partaking in equal work as her male colleagues. She had the same or greater level of skill, effort, and level of responsibility as her male colleagues under similar or worse conditions. She often exceeded expectations, and was praised as being the "hardest working," and

14

"best worker." Likewise, she obtained superior results when compared to her male counterparts.

72.     Despite this, Plaintiff's wages and income were wrongly suppressed and reduced in contrast to her male counterparts simply because, as she was advised, she was "a woman making too much money."

73.     Plaintiff's commission structure was wrongly suppressed because of her immutable characteristic of being a female.  In fact, Plaintiff's male contemporaries were earning at least double Plaintiff's commission rate.

74.     As a direct and proximate result of the unlawful gender discrimination occurring at Defendants' work place, the Plaintiff has suffered and continues to suffer direct and consequential damages, including but not limited to loss of employment income and employment benefits, mental pain and anguish, emotional suffering and loss of dignity.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff lost wages, including salaries, commissions, bonuses, raises, benefits, liquidated damages, pre and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, any other damages permitted by law, and such other relief deemed just and proper.

## COUNT V – FLORIDA CIVIL RIGHTS ACT GENDER DISCRIMINATION
### (All Defendants)

75.     Plaintiff incorporates paragraphs 1-46 by reference herein.

76.     Plaintiff is a female and at all times material hereto was qualified for the employment position she performed for the Defendants. Defendants were responsible for the employment environment in which Plaintiff worked, for the policies and procedures that govern that environment, and for the existence of the discrimination and harassment present in that working environment which they failed to prevent.

77.     Plaintiff was discriminated against on the basis of her gender in violation of the

Florida Civil Rights Act.

78.     Plaintiff's direct supervisor advised her that she was making more money than the company's CEO, which infuriated him, because, as "a female," "she should not be making that much money."

79.     Because of her immutable characteristic of being a female, the Plaintiff was discriminated against with respect to her compensation, terms, conditions and privileges of employment. She was deprived of opportunities, and adversely affected simply because of her gender. Her similarly situated male counterparts were treated more favorably than her with respect compensation, terms, conditions and privileges of employment.

80.     Plaintiff complained of the discrimination to Defendants' management. Defendants failed to reasonably investigate her complaints and also failed to undertake prompt, remedial measures to address her complaints and concerns.

81.     As a direct and proximate result of the unlawful gender discrimination occurring at Defendants' work place, the Plaintiff has suffered and continues to suffer direct and consequential damages, including but not limited to loss of employment income and employment benefits, mental pain and anguish, emotional suffering and loss of dignity.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff lost wages, including salaries, commissions, bonuses, raises, benefits, compensatory damages (including mental and emotional distress), front pay, punitive damages, pre and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT VI – FLORIDA CIVIL RIGHTS ACT GENDER-BASED HARASSMENT
### (All Defendants)

82.     Plaintiff incorporates paragraphs 1-46 by reference herein.

83. Plaintiff is a female and at all times material hereto was qualified for the employment position she performed for the Defendants. Defendants were responsible for the employment environment in which Plaintiff worked, for the policies and procedures that govern that environment, and for the existence of the discrimination and harassment present in that working environment which they failed to prevent.

84. Plaintiff was discriminated against on the basis of her gender by being subjected to a hostile working environment in violation of Florida Civil Rights Act. The harassment and hostilities that Plaintiff was subjected to were unwelcome and offensive, malicious, and recklessly and intentionally indifferent to her protected employment rights.

85. The hostile working environment was sufficiently pervasive and severe, so as to alter a term, condition, or privilege of her employment with the Defendants and created an abusive environment.

86. Plaintiff complained to Defendants' management that she was being subjected to harassment and a sexually hostile employment environment on the basis of her gender and Defendants failed to reasonably investigate said complaints and also failed to undertake prompt, remedial measures to address her complaints and concerns.

87. As a direct and proximate result of the unlawful gender discrimination and harassment occurring at Defendants' work place, the Plaintiff has suffered and continues to suffer direct and consequential damages, including but not limited to loss of employment income and employment benefits, mental pain and anguish, emotional suffering and loss of dignity.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff lost wages, including salaries, commissions, bonuses, raises, benefits, compensatory damages (including mental and emotional distress), front pay, punitive damages, pre

and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT VII – FLORIDA CIVIL RIGHTS ACT RETALIATION
### (All Defendants)

88.    Plaintiff incorporates paragraphs 1-46 by reference herein.

89.    After Plaintiff complained to her superiors that she was being unlawfully discriminated against, the Defendants retaliated against her in violation of Florida's Civil Rights Act. Fla. Stat. § 760.10.

90.    The Plaintiff was intentionally subjected to hostile conditions that were sufficiently pervasive and severe, so as to alter a term, condition, or privilege of her employment with the Defendants in part because of her attempts to defend against their discriminatory practices.

91.    Plaintiff complained to Defendants' management that she was being subjected to gender discrimination. The Defendants failed to reasonably investigate her complaints and concerns, and failed to undertake prompt, remedial measures to address those complaints and concerns.

92.    Shortly after telling her employer of 8 years that she was filing an EEOC charge for discrimination and harassment, the Defendants shut off her email accounts, advised her not to return to work, and terminated her.

93.    As a direct and proximate result of the unlawful retaliation, the Plaintiff has suffered and continues to suffer direct and consequential damages, including but not limited to loss of employment income and employment benefits, mental pain and anguish, emotional suffering and loss of dignity. But for her complaint regarding the harassment and discrimination, Plaintiff would not have been terminated.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff lost wages, including salaries, commissions, bonuses, raises, benefits,

compensatory damages (including mental and emotional distress), front pay, punitive damages, pre and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT VIII – CHAPTER 725 DISCRIMINATION
### (All Defendants)

94.     Plaintiff incorporates paragraphs 1-46 by reference herein.

95.     Plaintiff is a female and at all times material hereto was qualified for the employment position she performed for the Defendants.

96.     Plaintiff was discriminated against on the basis of her gender in violation of Florida Statute § 725.07

97.     In particular, Plaintiff's direct supervisor advised her that she was making more money than the company's CEO, which infuriated him, because, as "a female," "she should not be making that much money."

98.     The Defendants systematically reduced Plaintiff's accounts and removed necessary resources and support in an effort to reduce her commissions and compensation so as to equalize or reduce her pay in comparison with her male colleagues whom they thought should make more money than a woman.

99.     Plaintiff was partaking in equal work as her male colleagues. She had the same or greater level of skill, effort, and level of responsibility as her male colleagues under similar or worse conditions. She often exceeded expectations, and was praised as being the "hardest working," and "best worker." Likewise, she obtained superior results when compared to her male counterparts.

100.    Despite this, Plaintiff's wages and income were wrongly suppressed and reduced in contrast to her male counterparts simply because, as she was advised, she was "a woman making too much money."

101. Plaintiff's commission structure was wrongly suppressed because of her immutable characteristic of being a female. In fact, Plaintiff's male contemporaries were earning at least double Plaintiff's commission rate.

102. As a direct and proximate result of the unlawful gender discrimination occurring at Defendants' work place, the Plaintiff has suffered and continues to suffer direct and consequential damages, including but not limited to loss of employment income and employment benefits, mental pain and anguish, emotional suffering and loss of dignity.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff lost wages, including salaries, commissions, bonuses, raises, benefits, compensatory damages (including mental and emotional distress), front pay, punitive damages, pre and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT IX –INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

103. Plaintiff incorporates paragraphs 1-46 by reference herein.

104. The Defendants' harassment, discrimination and retaliatory actions directed against Plaintiff were intentional and caused Plaintiff severe mental and emotional distress.

105. The Defendants knew of the actions described herein. They sanctioned and were directly involved in the harassment, retaliatory actions, and hostile work environment directed against Plaintiff.

106. Defendants' conduct was inentional and reckless. They should have known the adverse impact it would have on Plaintiff. Defendants' conduct was outrageous, beyond the bounds of decency, atrocious, and utterly intolerable in a civilized community.

107.    In the alternative, Defendants' actions constituted negligent infliction of emotional distress, and Plaintiff had to resort to continuing medical treatment as a result of Defendants' conduct. Defendants had the duty to prevent the harassment, retaliatory actions, and hostile work environment directed against Plaintiff, and breached that duty. That breach caused Plaintiff to expereience severe emotional distress.

108.    As a direct and proximate result of the Defendant's action described herein, Plaintiff has suffered from severe emotional distress and mental anxiety, for which she should be compensated.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff damages due to wage loss and future earning capacity, past and future medical expenses, mental pain and anguish, loss of capacity for the enjoyment of life, along with punitive damages, pre and post judgment interest, amounts for lump sum tax consequences, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT X – DEFAMATION PER SE
### (All Defendants)

109.    Plaintiff incorporates paragraphs 1-46 by reference herein.

110.    The Defendants falsley exposed the Plaintiff to distrust, contempt, and ridicule. The Defendants' false claims had the tendancy to injure the Plaintiff with respect to her occupation, business and dampened her employment prospects. The false and non-privileged statements proximately caused injury to Plaintiff on a personal, social and business level.

111.    The Defendants statements about the reasons for Plaintiff's departure from her employ were false. The statements were directed at Plaintiff's former colleagues, work associates, and clients.

112.    The Defendants were neglilgent, at a minimum, in making the false statements.

113.    Plaintiff has been harmed and damaged because of the publication of the false facts. At a minimum, the defendants defamatory actions have negatively impacted Plaintiff's reputation, and affect her ability to find gainful employment in the industy.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff actual, special, nominal, and punitive damages, costs, attorneys' fees, and such other relief deemed just and proper.

## COUNT XI – BREACH OF CONTRACT
### (All Defendants)

114.    Plaintiff incorporates paragraphs 1-46 by reference herein.

115.    Plaintiff's position was held under both express and implied oral promises of job security and in accordance with the Defendants' assurances of continued employment, all of which constituted a contract of employment.

116.    The Plaintiff agreed to work for the Defendants in exchange for a base salary, specific commissions, bonuses, stock options, and other fringe benefits.

117.    Defendants' actions in unilaterally removing resources, support, client accounts, opportunities, commissions, and compensation from Plaintiff constitutes a willful, material breach of her oral contract with the Defendants.

118.    As a result of Defendants' actions, Plaintiff has suffered significant financial injuries, including but not limited to loss of pay, benefits and other economic losses, all of which she should be compensated for.

WHEREFORE, the Plaintiff, LAURA WILLIAMSON, respectfully requests that this court award the Plaintiff compensatory and special damages, costs, and such other relief deemed just and proper.

22

RESPECTFULLY SUBMITTED this 17th day of May, 2018

PEARSON BITMAN LLP

Ronnie J. Bitman, Esquire
Florida Bar No.: 0744891
rbitman@pearsonbitman.com
Kristen M. Crescenti, Esquire
Florida Bar No.: 107211
kcrescenti@pearsonbitman.com
485 N. Keller Road, Suite 401
Maitland, Florida 32751
Telephone:  (407) 647-0090
Facsimile:  (407) 647-0092
*Attorneys for Plaintiff*